**In the United States District Court**
**For the Western District of Texas**
**Waco Division**

| | | |
|---|---|---|
| Gregory Scott Johnson | § | |
| | § | CIVIL ACTION NO. |
| v. | § | W-09-CV-107 |
| | § | |
| Arkema, Inc. | § | |

## ARKEMA INC.'S MOTION TO PRECLUDE THE
## OPINIONS AND TESTIMONY OF RICHARD B. SCHLESINGER, PH.D.

TO THE HONORABLE JUDGE OF THE DISTRICT COURT:

COMES NOW, ARKEMA Inc. ("Arkema"), who is the Defendant herein, and

files its Motion to Preclude the Opinions and Testimony of Richard B. Schlesinger,

Ph.D., and in support of its motion, states as follows:

### INTRODUCTION

Plaintiff, Gregory Scott Johnson, alleges that he was injured while working at the

Owens-Illinois glass bottle plant in Waco when he inhaled chemicals which escaped from

equipment manufactured by Arkema.   Dr. Schlesinger, a toxicologist, has given an

opinion in support of Plaintiff's position that the alleged chemical exposure caused

Plaintiff to suffer a restrictive lung disease. Dr. Schlesinger's opinions are inadmissible

as a matter of law because they fail to meet the standards set by Federal Rule of Evidence

702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

As set forth fully in Arkema's Motion for Summary Judgment, there is no reliable

scientific evidence to show that exposure to monobutyltin trichloride ("MBTC") and/or

hydrochloric acid ("HCl") causes a chronic restrictive lung disease.   In fact, Dr.

Schlesinger does not even opine that these chemicals cause this condition, only that they

belong to a class of chemicals which "can [] be associated" with the disease. His opinion

has no reliable scientific basis, and falls well short of meeting Plaintiff's burden of proof on causation under Texas law. Therefore, the testimony will not assist the jury, is irrelevant, and must be excluded.

Moreover, Dr. Schlesinger's methodology meets none of the *Daubert* factors for scientific reliability. His causation opinion is not generally accepted in the scientific community and has not been peer-reviewed or tested. Dr. Schlesinger admits that there are no epidemiology studies, no scientific literature, not even one anecdotal case report which show that inhalation of MBTC and/or HCl causes chronic restrictive lung disease. Dr. Schlesinger's attempts to remedy the lack of relevant science by relying upon anecdotal evidence about an "irritant class" of chemicals are unavailing. The Fifth Circuit has consistently excluded causation opinions which rely on anecdotal evidence, as well as opinions based on a chemical "class" rather than the specific chemicals at hand.

As a matter of law, Dr. Schlesinger's causation opinions are neither relevant nor scientifically reliable, and they must be excluded.

## BACKGROUND

Arkema incorporates herein by reference the discussion of the factual background of the case that is set forth in Arkema's Motion for Summary Judgment.

## ARGUMENT

### I.   Applicable Legal Standards

Qualified experts are permitted to offer opinion testimony within their area of expertise when their testimony will assist the trier of fact and if "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles

and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." FED. R. EVID. 702.[1]

As the gate-keeper overseeing the admission of expert testimony, this Court "must make a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts at issue." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592-93 (1993). That is, "the trial judge must determine whether the expert testimony is both reliable and relevant." *Burleson v. Tex. Dep't of Criminal Justice*, 393 F.3d 577, 584 (5th Cir. 2004) *citing Daubert*, 509 U.S. at 589. "The expert's assurances that he has utilized generally accepted scientific methodology are insufficient." *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) *citing Daubert*, 509 U.S. at 276. Johnson bears the burden of proving that Dr. Schlesinger's testimony is admissible. *Id.*

An expert must "employ in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Wells v. Smithkline Beecham Corp.*, 601 F.3d 375, 378 (5th Cir. 2010) (quotations omitted). To that end, the Supreme Court and the Fifth Circuit Court of Appeals have identified a non-exhaustive set of factors that the court should consider when evaluating a proffered expert's methodology, including whether the theory or technique: (1) can be or has been tested; (2) has been subjected to peer review and publication; (3) has a known or potential rate of error or standards controlling its operation; and (4) is generally accepted within the relevant scientific community. *Burleson*, 393 F.3d at 584, citing *Daubert, supra.*

---

[1]     For the purposes of this Motion only, Arkema does not challenge Dr. Schlesinger's qualifications as a toxicologist.

In toxic tort cases, courts "must resolve cases . . . 'on the basis of scientific knowledge that is currently available,' and only evidence that demonstrates a causal relationship between a product and an alleged injury can be admitted as relevant and reliable." *Newton v. Roche Labs., Inc.*, 243 F. Supp. 2d 672, 677 (W.D. Tex. 2002), *quoting Moore* 151 F.3d at 276.

## II.   As A Matter Of Law, Dr. Schlesinger's Causation Opinion Is Inadmissible

Arkema described Dr. Schlesinger's opinions in full at pp. 5-8 of its Motion for Summary Judgment and incorporates that discussion herein by reference.  In relevant part, Dr. Schlesinger has opined that MBTC and HCl are among the toxicological class of "strong irritants", that inhalation of irritants leads to inflammation and "can [] be associated" with "later major sequelae" that result in "respiratory impairment", and that Plaintiff's diagnosis of "restrictive lung disease is consistent with the known chronic effects of acute exposure" to the class of strong irritants.[2]

### A.   Dr. Schlesinger's Causation Opinion Is Irrelevant Because It Is Not Based On Scientifically Reliable Evidence

It is well-settled that Texas law requires Plaintiff to prove, through scientifically reliable evidence, that it is more likely than not exposure to MBTC and/or HCl caused his specific alleged disease.[3] *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W. 2d 706, 714-715 (Tex. 1997).  Courts look to the standards set forth in *Havner* in deciding whether proposed expert testimony is relevant because "whether expert testimony will assist the trier of fact is governed in part by whether the testimony is relevant to the plaintiff's

---

[2]     *See* Preliminary Report of Dr. Schlesinger, attached hereto as "Exhibit A," at 4, 10.
[3]     Dr. Schlesinger's opinion attempted to relate MBTC and/or HCl exposure to "restrictive lung disease" because that was the diagnosis that Dr. Grodzin had given to Plaintiff at the time.  After Dr. Schlesinger's report was issued and his deposition was taken, Dr. Grodzin issued a new report purporting to diagnose Johnson with pulmonary fibrosis, one of many pulmonary illnesses classified as "restrictive." That new diagnosis does not alter this Motion.  There is no evidence to show that exposure to MBTC and/or HCl causes restrictive lung disease in general, let alone pulmonary fibrosis in particular.

burden of proof under the substantive law, and testimony that will not assist the trier of fact by advancing an element of the plaintiff's case should be excluded." *Cano v. Everest Minerals Corp.*, 362 F. Supp. 2d 814, 822 (W.D. Tex. 2005) (citations omitted).

As set forth at pp. 12-17 of Arkema's Motion for Summary Judgment, Plaintiff cannot meet his burden of proof because there is no scientifically reliable evidence showing that exposure to HCl and/or MBTC causes chronic restrictive lung disease. Tellingly, Dr. Schlesinger never opined that exposure to HCl and/or MBTC causes chronic restrictive lung disease; he only stated that exposure to strong respiratory irritants "can [] be associated" with respiratory impairment, and "has been shown" to result in restrictive lung disease.[4]  As set forth below, there is not even any scientifically reliable evidence to support this limited opinion.  Also, the Texas Supreme Court has held that opinion testimony (such as Dr. Schlesinger's) that a substance "can" cause a disease fails to meet Plaintiff's burden of proving that the substance "does" cause the disease. *Havner*, 953 S.W. 2d at 720.[5]  Dr. Schlesinger's opinion on causation is irrelevant to Plaintiff's burden of proof, and is thus inadmissible. *See Cano,* 362  F. Supp. 2d at 822.

**B.**     **<u>Dr. Schlesinger's Methodology Is Not Scientifically Valid</u>**

Dr. Schlesinger's opinion also is inadmissible because his methodology fails to satisfy any of the *Daubert* criteria.  In *Wells*, the Fifth Circuit excluded the testimony of plaintiff's causation experts, holding that their methodology met none of the "applicable *Daubert* tests," because their theory "[wa]s not generally accepted, has not been subjected

---

[4]     Ex. A at 10.
[5]     Similarly, Dr. Schlesinger's opinion that respiratory irritants can be "associated" with lung impairment is not probative. *See Newton*, 243 F. Supp. 2d at 677 ("The Fifth Circuit has been particularly careful to distinguish evidence that establishes a *causal relationship* between the product and the alleged injury, from evidence that merely "suggests" an *association*  between the product and the injury.) (emphasis in original) (citations omitted).

to peer review and publication, and [wa]s not backed by studies meeting requisite scientific standards." 601 F.3d at 380-381. As detailed below, Dr. Schlesinger's causation opinion similarly fails these tests and should be excluded.

      1.    **Dr. Schlesinger's Causation Opinions Are Not Generally Accepted In The Scientific Community And Have Not Been Subject To Peer Review Or Publication**

There is no evidence whatsoever that the scientific community accepts Plaintiff's position that acute exposure to MBTC and/or HCl causes chronic restrictive lung disease, or even that acute exposure to the class of respiratory irritants as a whole causes this disease. In fact, Dr. Schlesinger admitted that it is *not* generally accepted in his field that "one or two acute exposures to MBTC substantially elevates the risk of developing restrictive lung disease."[6] Similarly, he did not identify any article or other literature which would indicate acceptance of his theory as to HCl. His methodology thus fails to meet the first *Daubert* test.

There also are no relevant peer-reviewed articles which state that inhalation of MBTC and/or HCl causes restrictive lung disease. *See* Ex. B at 205-206 (no peer-reviewed articles identifying "a cause and effect relationship between exposure to MBTC and pulmonary disease"), 219 (no peer-reviewed articles identifying that "hydrochloric acid increases the risk of developing restrictive lung disease."), and 267 (no peer-reviewed articles addressed the "additive effects of hydrochloric acid and MBTC").

Dr. Schlesinger acknowledged that he had made a thorough search of the scientific literature.[7] His abject failure to identify even a *single* peer-reviewed article

---

[6]    Deposition Transcript of Richard B. Schlesinger, Ph.D., relevant excerpts of which are attached as Exhibit B, at 206.

[7]    Ex. B at 264-265.

relating MBTC and/or HCl to an increased risk of developing restrictive lung disease shows that his methodology fails the second factor identified by *Daubert*.[8]

### 2. Dr. Schlesinger Opinions Are Not Supported By Scientifically Reliable Studies

In addition to the foregoing factors, courts in this Circuit look to whether a causation expert's opinion is supported by studies meeting scientific standards. *Wells*, 601 F.3d at 380-381.  At pp. 12-17 of its Motion for Summary Judgment, Arkema detailed the complete lack of any scientific evidence or studies supporting Dr. Schlesinger's causation opinion, and incorporates that discussion herein by reference.  By way of example only, the Fifth Circuit has expressly disapproved of "causative conclusions bereft of statistically significant epidemiological evidence." *Wells,* 601 F.3d at 380.  Dr. Schlesinger admitted that there are *no epidemiological studies showing that exposure to MBTC and/or HCl can cause restrictive lung disease*:

> "Q. And so you're not aware of any epidemiological studies relating to the effect of hydrocholoric acid on humans, are you.
> A. No."

> "Q. Are there any epidemiological studies relating to human exposure to MBTC.
> A. There aren't any."[9]

Because Dr. Schlesinger's opinion is not based on any scientifically reliable evidence, it fails the third factor identified by *Wells* and *Daubert*.

Courts in this Circuit have routinely excluded expert causation testimony like Dr. Schlesinger's which fails to meet *Daubert's* methodology factors.  *See, e.g., Wells*

---

[8]     Dr. Schlesinger references two animal studies in his testimony, one involving baboons exposed to HCl, and one involving rodents exposed to MBTC.  Arkema explained in detail in its Motion for Summary Judgment, at pp. 14-15, the reasons why these studies must be rejected as reliable evidence under Texas law.  In summary, Texas cases recognize generally that animal studies are of limited usefulness in proving toxic tort causation.  Moreover, Dr. Schlesinger admits that he has made no attempt to correlate those studies to Plaintiff's alleged exposure, which was at very different concentrations and very different durations. *Id.*
[9]     Ex. B at 196-197.

(excluding causation expert testimony where it was largely based upon anecdotal case reports and an unpublished epidemiological study); *Cotroneo v. Shaw Envtl. & Infrastructure, Inc.*, 2007 WL 3145791, at *4-5 (S.D. Tex. Oct. 25, 2007) (excluding causation testimony where expert lacked statistically significant epidemiological data showing that plaintiffs' radiation exposure put them at a substantially elevated risk of developing their injuries, and where expert was unable to correlate animal exposure anecdotal evidence); *Burleson, supra,* (court properly excluded testimony of toxicologist and expert in occupational medicine that plaintiff's exposure to tungsten electrodes caused his cancer); *Allen v. Pa. Eng'g Corp.*, 102 F.3d 194 (5th Cir. 1996) (expert testimony properly excluded where no epidemiological study found a statistically significant link between exposure to a chemical and human brain cancer and the results of animal anecdotal evidence were inconclusive at best); *Newton, supra* (excluding expert testimony which relied upon anecdotal case reports and ignored contrary anecdotal evidence). These cases require the exclusion of Dr. Schlesinger's causation opinion.

Faced with a dearth of reliable science showing that MBTC and/or HCl cause restrictive lung disease, Dr. Schlesinger resorts to opining that MBTC and HCl belong to a "class" of "strong irritants", that inhalation of irritants "can [] be associated with" respiratory impairment, and that acute exposure to respiratory irritants "has been shown" to result in restrictive lung disease.[10] This sleight-of-hand does nothing to render his testimony admissible.

First, there is no science that would be considered reliable under Texas law - no epidemiology, no statistically significant study - to establish that inhalation of this "irritant class" causes a restrictive lung disease. *See* Arkema's Motion for Summary

---

[10]   Ex. A at 10.

Judgment at 12-15.  Moreover, the Fifth Circuit has held that causation opinions are properly excluded where they are based upon anecdotal evidence and articles about classes of chemicals, including a range of chemicals to which the plaintiffs were never exposed. *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 353 (5th Cir. 2007); *Wells*, 601 F.3d at 380, n. 26 (rejecting reliance upon an otherwise statistically significant study because it related to a class of medications, rather than the specific medication at issue).

Here, it is particularly objectionable to draw class-based conclusions because of toxicological differences between chemicals in the "irritant class." Dr. Schlesinger admits that the toxicity of chemicals in this class differ.[11] Different chemicals within the irritant class can cause greater or lesser tissue damage in the lungs than other chemicals within that same class.[12] For example, different chemicals within the class have differing levels of solubility, which affects how far the chemicals will penetrate into the lungs and respiratory tract.[13] In fact, one of the sources cited by Dr. Schlesinger states that "[T]he health effects of an acute exposure to an irritant gas or vapor are dependent upon the physiochemical properties of that particular gas or vapor, as well as specific host factors."[14] *See also* Arkema's Motion for Summary Judgment at 18-19.

In addition, although Dr. Schlesinger claimed that each chemical within the class will cause inflammation upon inhalation, he admitted that inflammation often resolves on its own, and does not always progress into a chronic condition.[15] Dr. Schlesinger also admitted at his deposition that "the factors that govern whether an initial acute exposure

---

[11]   Ex. B at 39-40, 188; *see* Ex. B at 176-77.
[12]   Ex. B at 189.
[13]   Ex. B at 150-151, 154.
[14]   Ex. B at 166-167; Schlesinger Deposition Ex. 6, a copy of which is attached as Exhibit C.
[15]   Ex. B at 181, 185; *see* Ex. B at 117, 159.

injury progresses to chronic disease are not well defined."[16]   Put another way, it is not well-known in the toxicology field why, in some instances, acute exposure will lead to inflammation in some instances that resolves on its own, but in other instances, it will lead to a chronic disease.[17]   Moreover, only some chemicals within the irritant class are associated with the development of fibrosis.[18]   Thus, Dr. Schlesinger's "class-based" opinions are also irrelevant and unreliable.

## CONCLUSION

For all of the foregoing reasons, this Court should preclude the opinion testimony of Richard B. Schlesinger, Ph.D.

Respectfully submitted,

/s/ Roy L. Barrett
Roy L. Barrett
State Bar No. 01814000
Greg White
State Bar No. 21329050
NAMAN, HOWELL, SMITH & LEE, PLLC
400 Austin Ave., Ste. 800
P. O. Box 1470
Waco, Texas  76703-1470
(254) 755-4100
FAX (254) 754-6331

and

Gerald E. Burns
Pennsylvania Bar No. 59466
BUCHANAN INGERSOLL & ROONEY, P.C.
50 S. 16th Street, Suite 3200
Philadelphia, Pennsylvania
(215) 665-5360
FAX (215) 665-8760

ATTORNEYS FOR DEFENDANT

---

[16]   Ex. B at 179.
[17]   Ex. B at 180-181.
[18]   Ex. B at 186.

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing was delivered via electronic filing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following, on this 15th day of October, 2010 as follows:

Rod S. Squires
Mark Hobbs
Beard Kultgen Brophy Bostwick Dickinson & Squires, L.L.P.
Central Tower, Suite 301
5400 Bosque Blvd.
Waco, Texas  76710

/s/ Roy L. Barrett
Roy L. Barrett