UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| GREGORY SCOTT JOHNSON, | § § § | |
| Plaintiff | § § | |
| V. | § | CIVIL ACTION NO. W-09-CV-107 |
| ARKEMA, INC., | § § § | |
| Defendant | § § | |

**PLAINTIFF'S MOTION TO EXCLUDE DR. ROBERT ARIS**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, **GREGORY SCOTT JOHNSON** ("Johnson" or "Plaintiff") and hereby files his MOTION TO EXCLUDE DR. ROBERT ARIS ("Dr. Aris") and respectfully move this Court to exclude Defendant's proposed expert because the opinions he offers fail to satisfy the requirements under Federal Rule of Evidence 702 and the Supreme Court's opinion in *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 595 (1993). In furtherance thereof, Plaintiff would respectfully show unto the Court as follows:

## I. BACKGROUND

Gregory Scott Johnson, age 33, was employed as a hot-end mechanic at Owens Illinois, Inc. ("Owens Illinois") in Waco, Texas during the summer of 2007. In 2007, Defendant Arkema installed its Certaincoat Application system (the "system" or "equipment") at the Owens Illinois plant. The system is intended to apply a hazardous chemical monobutyltin trichloride (known as "MBTC") to glass bottles while at the same time keeping MBTC from being emitted from the application system and inhaled by Owens Illinois workers. Following two incidents of exposure to MBTC, Johnson suffered serious and permanent lung injury resulting in the loss of over 50% of his

lung capacity. MBTC is designed, manufactured and sold under the brand name "Certincoat TC-100" by Defendant. Johnson's exposure to MBTC was due to a defect in the system applying MBTC to hot bottles. This system is designed, manufactured, sold, and installed by Defendant.

Johnson was initially exposed to MBTC in early June of 2007, shortly following installation of a new system at the Owens Illinois plant where he worked. Following a shift which required him to work near one of the systems for 4-5 hours, he became ill. He saw his family doctor, who diagnosed him with pneumonia based on an x-ray showing fluid in his lungs. Johnson missed several days at work recovering from his illness.

Johnson's second exposure to MBTC occurred on July 15, 2007. After working around Arkema's hood for 2-3 hours, Johnson lost the ability to breathe. He gave himself oxygen and was transported to the emergency room after 1:00 a.m. on July 16, 2007. *Id* at (54:16-55:3). It was only then that he realized that he and his coworkers were not suffering from pneumonia, but from exposure to the vapors from the newly installed C-4 Hoods.

Since being exposed to MBTC at dangerous levels, six (6) treating physicians in Waco have now treated Johnson for his lung injury and all six treating physicians found that Johnson suffers from a restrictive lung condition caused by the chemical exposure. Exhibit Nos. 16, 17, 18, 19, 20, & 21. Johnson's pulmonary function testing demonstrates that he has lost approximately 60% of his lung capacity and that he now has severe restrictive lung disease. Exhibit No. 13, 14, & 15. *See* Dkt. #95 (Ex. T & U). Likewise, CT scan imaging, interpreted by an attending radiologist, confirms the presence of diffuse interstitial lung disease throughout his lung tissue, with "significant involvement" in over 50% of his lungs. *See* Exhibit No. 1 (49:19-50:2)

Since experiencing a serious lung injury, Johnson's life has significantly changed. He is limited both in the activities he enjoys – playing sports, exercise, activities with his wife, son and daughter – as well as what he is able to do at work. Johnson has never smoked and prior to his

exposure to toxic Certincoat spent vapors emitted from the system, he had never before been diagnosed with asthma or any other lung problem.  *See* Exhibit No. 2 (130:10-15) and Exhibit No. 22.  Now 36 years old, he will never regain the use of over half of his lung capacity.  *See* Dkt. #95 (Ex. B).

Notwithstanding these facts, Arkema contends that Johnson has no lung injury at all.  Instead, Arkema contends without basis that Johnson's shortness of breath, if he actually has any at all, is merely the result of obesity.  See Exhibit 5.

In support, Arkema offers the testimony of Dr. Aris, a pulmonologist who has never met or examined Johnson (or requested an opportunity to meet or examine him).  Exhibit No. 3 (114:20-23).  In addition to not examining Johnson, Dr. Aris has not made himself aware of (1) the level of MBTC exposure which will cause injury to lung tissue or (2) the level of MBTC exposure experienced by Johnson.  *Id.* (15:5-13).  Dr. Aris clearly attributes the source of Johnson's lung injury as "morbid obesity" but admits that he is not qualified or able to make a diagnosis of Johnson.  *See id.* (114:10-115:7)(testifying that "I have not met [Johnson]", "I have not made any diagnosis of Johnson" and "doctors don't make diagnoses without seeing patients").  Though he admits that interstitial lung disease is not caused by obesity, when confronted with recent CT scan images showing that Johnson in fact has interstitial lung disease, he claimed to be unable to see the digital images.  Instead, he reviewed what Arkema's lawyers sent him – poor-quality printouts of the images (6 to a page), concluding that the non-retained radiologist who interpreted the images (uncompressed on an oversized ultra-high-resolution screen) was incorrect.

As more fully set forth below, Dr. Aris failed to employ reliable, scientific testing methodology to support his opinions.  Dr. Aris's testimony should be excluded because he has no personal knowledge about Johnson's lung disease, has not made himself fully aware of Johnson's exposure to MBTC or of Johnson's medical records and because the opinion testimony he offers is

unsupported by scientific methodology and fact and therefore unreliable. His testimony would provide nothing of value to the jury, and is offered in the hopes that the jury will blame Johnson for being overweight rather than hold Arkema accountable for its negligence.

## II. THE *DAUBERT* STANDARD

Federal Rule of Evidence 702 imposes a duty on trial courts to act as "gatekeepers" to assure that speculative and unreliable testimony disguised as expert opinions does not reach the jury. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 n.7 (1993). The responsibility of the trial court is to make certain that, in the courtroom, an expert employs the "same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

Notwithstanding the dictates of *Daubert* and its progeny, "the rejection of expert testimony is the exception rather than the rule." *Levy v. U.S.*, 2008 WL 5504695, *3 (W.D. Tex., 2008) (quoting Fed. R. Civ. P. 702, Adv. Comm. Notes (2000)). The trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system. *See id.* (quoting *United States v. 14.38 Acres of Land, More or Less, Situated in Leflore County, Mississippi*, 80 F.3d 1074, 1078 (5th Cir.1996)). Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking admissible evidence. *Daubert*, 509 U.S. at 596.

Under *Daubert*, expert testimony is admissible only if the proponent demonstrates that: (1) the expert is qualified; (2) the evidence is relevant to the suit; and (3) the evidence is reliable. *See Watkins v. Telsmith, Inc.*, 121 F.3d 984, 989 (5th Cir. 1997). Rule 702 identifies three components of reliability: (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case. Fed. R. Evid. 702. Reliability is determined on a case by case by the trial

court, which focuses on the principles and methodology of the expert, rather than the conclusions they generate. *Daubert*, 509 U.S. at 595.

### III. ARGUMENTS & AUTHORITIES

Defendant offers the testimony of Dr. Robert Aris, a pulmonologist, who testifies that the cause of Johnson's lung injury is "obesity," not MBTC exposure. Dr. Aris's opinion testimony is contrary to Johnson's treating physicians, ignores medical records, is inconsistent with Dr. Aris's own testimony and stated methodology and is largely based on speculation, not the facts.

#### A. Dr. Aris's Methodology is Unreliable

Dr. Aris has failed or refused to use same methodology or level of intellectual rigor utilized by clinical pulmonologists. More specifically, in forming his opinions, Dr. Aris failed or refused to (1) review or consider critical medical records he admits are necessary for diagnosing the lung injury complained of, (2) personally examine Johnson prior to making a diagnosis, (3) familiarize himself with Johnson's level of MBTC exposure prior to opining that Johnson was not exposed to significant levels of MBTC, or (4) use the methodology he describes as the "only way" to prove the very opinion he now relies upon. For these and related reasons, Dr. Aris testimony must be excluded.

##### 1. Dr. Aris has Not Reviewed or Considered Certain Medical Records

First, Dr. Aris's failed or refused to review and consider certain medical records necessary for making (or critiquing) a diagnosis. Dr. Aris testified that the diagnoses of interstitial lung disease and pulmonary fibrosis are "made by imaging, usually with chest CT imaging." Exhibit No. 3 (97:20-98:5). But Dr. Aris failed or refused to review and consider a September 2010 high-resolution CT scan of Johnson's lungs in which, according to the attending radiologist, showed the presence of interstitial lung disease in Johnson's lung tissue. *See id.* (41:13-42:11)(stating that he [Aris] reviewed PDF printouts of the CT scan rather than the actual images themselves); Exhibit

No. 4 (actual PDF images reviewed by Dr. Aris). Dr. Aris admitted that the printouts he reviewed, and based his opinions on, were "grainy" and "difficult to interpret."[1] Exhibit No. 3 (43:11-17). Dr. Jon Bergstrom, the attending radiologist, testified that he reviewed the *actual* CT scan images which were ten to twenty times the size of those reviewed by Dr. Aris, and that it would be a "departure from the standard of care" for a radiologist to base opinions upon the PDF document (Exhibit No. 4) which Dr. Aris reviewed and relied upon in this case. *See* Exhibit No. 1 (89:19-92:5). Because he failed or refused to review the actual radiological data, Dr. Aris couldn't even locate the radiological images (nos. 25 and 26) which the attending radiologist identified as the most prominent indicators of lung disease. *See* Exhibit No. 3 (46:8-23, 47:21-23).[2]

Despite not being able to locate the images identified by the attending radiologist as most indicative of Johnson's lung disease, Dr. Aris nevertheless offers his opinion that Johnson's CT scan does not indicate the presence of interstitial lung disease, disagreeing with the attending radiologist (not a retained expert). *Id.* (54:3-6). In support, Dr. Aris testifies that "the lung images I saw were normal," but admits his opinion might change if he had actually reviewed the high-resolution radiological images reviewed by the attending radiologist. *Id.* (54:7-18). Dr. Aris simply did *not* review Johnson's September 2010 high-resolution CT scans and based his opinion, contradicting the attending radiologist and Dr. Grodzin, on unreliable information. Dr. Aris cannot, on the one hand, (1) opine that CT imaging is the primary source for diagnosing interstitial lung disease and pulmonary fibrosis (both diagnoses that Plaintiff's expert has attributed to Johnson), (2) refuse to

---

[1] Notably, Plaintiff provided Defendant's counsel with the actual images which were reviewed by the attending radiologist and Plaintiff's expert pulmonologist. It will be undisputed that only Dr. Aris reviewed and offered opinions based on the poor quality PDF printouts Defendant's counsel provided to him, rather than the actual radiological images reviewed by the other experts. Even Defendant's attorneys admittedly could view the actual images on their own computers, which they demonstrated during the deposition of Dr. Jon Bergstrom, the attending radiologist.

[2] Importantly, the attending radiologist concluded that Johnson's lung injury was diffuse (spread throughout his lungs), but most prominently seen in image nos. 25 and 26 (and the adjacent images). Dr. Aris testified that, in addition to being poor image quality, the PDF reproductions he reviewed weren't even numbered, so he couldn't tell which images the attending radiologist was referring to.

review and consider actual CT imaging of Johnson's lungs and, on the other hand, (3) opine that Johnson does not have interstitial lung disease or pulmonary fibrosis. Dr. Aris's testimony must be excluded on this basis.

### 2. Dr. Aris has Not Personally Examined Johnson

Dr. Aris has opined that "the most likely cause of [Johnson's lung injury] is his morbid obesity and deconditioning" without even meeting or examining Johnson. Exhibit No. 5 (p.3). Dr. Aris conceded that "doctors don't make diagnoses without seeing patients." Exhibit No. 3 (114:10-115:7). Further, Dr. Aris has admittedly never met or examined Johnson (or requested an opportunity to meet or examine him). *Id.* (114:20-13). Nevertheless, Dr. Aris renders an opinion/diagnosis of the cause of Johnson's lung injury. By his own admission, Dr. Aris has not taken the necessary steps to render such an opinion and/or to arrive at such a diagnosis. Therefore, Dr. Aris's should not be allowed to testify that Johnson's lung injury is the result of obesity or that Johnson does not suffer from interstitial lung disease or pulmonary fibrosis.

### 3. Dr. Aris is Not Familiar with the Level of MBTC Exposure in Johnson

Dr. Aris has opined that "Mr. Johnson did not have evidence for a significant exposure to MBTC" and "there is no evidence of a toxic lung injury due to MBTC and HCL." Exhibit No. 5 (p.3). But Dr. Aris has not even made himself aware of (1) the level of MBTC exposure which is dangerous to humans, or (2) the level of MBTC exposure that Johnson experienced prior to his injury. Exhibit No. 3 (15:5-13). It is difficult to understand how Dr. Aris can opine that Johnson "did not have evidence for a significant exposure to MBTC" or has suffered from an exposure to MBTC when Dr. Aris admittedly is not aware of the level or extent of exposure Johnson experienced or the level of MBTC exposure which is considered dangerous. In order to render an opinion regarding whether Johnson had been exposed to significant levels of MBTC, one would necessarily have to familiarize themselves with the level of MBTC exposure the patient had actually

experienced.[3] Offering the bare opinion that "there is no evidence" of lung injury due to MBTC exposure without examining the patient or inquiring into the level of MBTC exposure should not be permitted.

> 4. <u>Dr. Aris Failed to Follow his own Proffered Methodology prior to Rendering an Opinion on Obesity</u>

Dr. Aris did not follow his own methodology for concluding that "obesity" was the cause of Johnson's lung injury. Dr. Aris testified that "the only way" to prove that a restrictive lung condition is caused by obesity is "if the patient loses weight back down to normal body weight and the condition [restrictive lung disease] goes away." Exhibit No. 3 (88:20-24). It is undisputed that Dr. Aris has never met or examined Johnson and has presented no evidence that Johnson has ever returned to his normal body weight (or even what Johnson's "normal body weight" is) or that the restrictive lung condition has gone away. Nevertheless, Dr. Aris intends to testify to the jury that "the most likely cause" of Johnson's restrictive lung condition is his "morbid obesity and deconditioning." Exhibit No. 5 (p.3). Based on his own admission, it does not appear that Aris can provide this testimony to a reasonable degree of medical certainty. Dr. Aris offers this opinion despite the absence of every condition admittedly required to determine that obesity caused the restrictive lung condition. Such testimony is incongruent, unreliable and inherently unhelpful for a jury.

      **B.**    **Dr. Aris's Diagnosis of Obesity Is Based on Speculation**

The opinions offered by Dr. Aris are without support in the medical record. They are also inconsistent with every other physician that has been involved in Johnson's care. Taking into consideration his flawed methodology described above, his opinions therefore amount to precisely the kind of subjective speculation made improper by Rule 702.

---

[3] Notably, Defendant's expert

With his report, Dr. Aris offers two alternative explanations for the many pulmonary function tests and high-resolution CT scan showing that Johnson's lung capacity is severely reduced and that Johnson suffers from interstitial lung disease and pulmonary fibrosis. Rather than acknowledge the obvious cause of Johnson's lung disease (an acute event/exposure which caused Johnson to be taken to the emergency room), Dr. Aris contends that the test results are the result of (1) obesity or (2) poor performance of the tests. Dr. Aris has no support in the record for these contentions, and in fact such contentions are contrary to Dr. Aris's own sworn testimony.

1. <u>Dr. Aris Admits that Obesity Cannot Cause Interstitial Lung Disease</u>

Dr. Aris's opinion that Johnson's lung injury was caused by "morbid obesity" and "body habitus" is speculation, not based on facts, contrary to his own deposition testimony and ignores undeniable evidence to the contrary. In his report, Dr. Aris concludes that Johnson's reduction in lung function is most likely caused by "morbid obesity and deconditioning." Exhibit No. 5 (p.3). Likewise, when considering Johnson's pulmonary function tests (PFTs) showing diminished lung function, Dr. Aris opines that these results "reflected [Johnson's] body habitus rather than intrinsic lung disease." *Id.* at 2.

Dr. Aris's opinions regarding obesity contradict his own testimony. Dr. Aris concedes that diagnoses of interstitial lung disease and pulmonary fibrosis are "made by imaging, usually with chest CT imaging." Exhibit No. 3 (97:20-98:5). In September 2010, Johnson in fact underwent a high-resolution CT scan of his chest. Exhibit No. 6. The 2010 HRCT scan revealed that Johnson suffers bilateral interstitial lung disease, prominent in over fifty percent (50%) of his lung tissue. *Id.*, Exhibit No. 1 (49:19-50:2). According to Dr. Aris, *obesity does not cause interstitial lung disease.* Exhibit No. 3 (95:4-5). The attending radiologist (a non-retained expert) who initially reviewed the September 2010 HRCT scan agrees. Exhibit No. 1 (59:9-11, 60:24-61:2). Nevertheless, Dr. Aris still attributes Johnson's lung injury, shown by high-resolution CT scan to be interstitial lung disease, to "morbid

obesity." Exhibit No. 5 (p.3). Dr. Aris offers no explanation for the presence of interstitial lung disease in over fifty percent (50%) of Johnson's lung tissue in the September 2010 CT scan and no retraction of his prior testimony attributing Johnson's lung disease to obesity. Instead, Dr. Aris testifies that he simply cannot see the interstitial lung disease in the "grainy" PDF printouts (six to a page) Defendant's counsel provided to Dr. Aris for review. Exhibit No. 3 (43:11-17, 54:3-6). Such testimony is pure speculation, with no reliable basis and is inherently unhelpful for a jury.

In addition to contradicting his own testimony, Aris admits that no treating physician has ever opined that Johnson's lung condition was caused by obesity and that he has not discussed his theory of obesity as a cause of Johnson's lung injury with any of Johnson's treating physicians. Exhibit No. 3 (88:25-89:8). Further, Aris offers no scientific studies or reports which support his finding that Johnson, a patient whose radiological data shows interstitial lung disease, could have developed such disease as a result of obesity.[4] *See, e.g.,* Exhibit Nos. 5, 7 (Reports). Even if Dr. Aris is permitted to testify to other matters, Aris must be precluded from offering the opinion that Johnson's lung condition is caused by obesity. This opinion, as demonstrated above, is simply unsupportable.

Dr. Aris refuses to review, consider and explain Johnson's September 2010 HRCT scan results which showed interstitial lung disease. When confronted with recent CT scan images showing that Johnson in fact has interstitial lung disease, Aris claimed to be unable to see the images explaining that he is unable to use the software on the CD from his office. *See supra*, III.A.1.

    2. <u>Dr. Aris offers an Unsupported Explanation of Johnson's PFT Test Results</u>

Dr. Aris contends that Johnson's spirometry results following his exposure were "normal" or "near normal." Exhibit No. 5 (p.2). However, this characterization is inconsistent with the test

---

[4] While obesity can have an effect on lung function, Dr. Aris has not cited any study supporting the proposition that obesity can cause interstitial lung disease or pulmonary fibrosis.

results themselves as well as the opinion of Johnson's treating physicians, all of whom have acknowledged Johnson's restrictive lung disease. Exhibit Nos. 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, and 21. These test results show both that his lung capacity was significantly reduced immediately following his July 15, 2007 exposure, and that his lung capacity continued a relatively steady decline until November of 2008. Dr. Aris simply refuses to acknowledge what six (6) other qualified physicians (all of whom had actually examined Johnson) conclude.



The above summary chart illustrates that all of Johnson's spirometry tests after his July 15, 2007 exposure were below 100%. Only one was above 80%. Following the first few weeks after his exposure, his lung function continued to decline. This is shown in the January 29, 2008 PFT, which indicated an FVC of 63% and Total Lung Capacity of 68%. See Exhibit No. 12. The reduction in lung capacity resulting from his exposure continued to worsen through November of 2008. At that time, another PFT was conducted, this time showing an FVC of 29% and Total Lung Capacity of 53%. See Exhibit No. 13.

The PFT tests, and accompanying notes by Johnson's treating physicians, clearly demonstrate that Johnson suffers from a lung restriction and has a reduced lung function. Confounded that the results of Johnson's PFTs could show a marked reduction in Johnson's lung function, Dr. Aris repeatedly accuses Johnson of "not doing the breathing tests correctly" and of "improper performance." Exhibit Nos. 5 (pp.2-3). Curiously, Dr. Aris dismisses each PFT test showing Johnson's reduced lung function by accusing Johnson of "not doing the breathing tests correctly," but bases his opinions that Johnson's lung condition is caused by obesity on the very same PFT tests that Aris claims are inaccurate or improperly done. *Id.* In any event, Dr. Aris cites no scientific authority or reasoned basis for drawing this conclusion.

Dr. Aris's testimony is simply confounding. Dr. Aris testified that he disagreed with one physician/nurse that Johnson "showed appropriate effort and technique" in performing a PFT, but also testified that he is not of the opinion that Johnson used less than maximum effort on his PFT testing. Exhibit No. 3 (94:15-95:1; 89:21-90:13), 7 (p.2)(referring to "evidence of improper performance"). Unsurprisingly, Dr. Aris disagrees with every one of Johnson's treating physicians who uniformly conclude that Johnson's PFT results show a lung restriction. *See* Exhibit No. 3 (65:22-70:10). Thus, we are left with bare and unsupportable accusations by Dr. Aris that the PFT tests were performed incorrectly (but not intentionally so). Dr. Aris's speculation on this issue would not be helpful to the jury, and therefore, should be excluded.

## IV. PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that this Court preclude, in its entirety, the testimony of Dr. Robert Aris and grant Plaintiff any and all other relief, in law and in equity, to which Plaintiff may be entitled.

Respectfully submitted,

**BEARD KULTGEN BROPHY**
**BOSTWICK DICKSON & SQUIRES, LLP**


/s/ Ryan C. Johnson
Rod S. Squires
State Bar No. 18979300
Mark C. Hobbs
State Bar No. 24035905
Ryan C. Johnson
State Bar No. 24048574
Central Tower, Suite 301
5400 Bosque Blvd.
Waco, Texas 76710
(254) 776-5500
(254) 776-3591 (facsimile)

**ATTORNEYS FOR PLAINTIFF**


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been served upon the following via electronic mail transmission and/or certified mail, return receipt requested, on this the 15th day of October, 2010.

**ROY BARRETT**
**NAMAN HOWELL SMITH & LEE, P.C.**
400 Austin Avenue, Suite 800
Waco, TX 76703-1470
254-755-4100/254-754-6331 Fax

**GERALD E. BURNS**
**BUCHANAN INGERSOLL & ROONEY, P.C.**
50 S. 16th Street, Suite 3200
Philadelphia, PA
215-665-5360
215-665-8760 Fax


/s/ Ryan C. Johnson
Ryan C. Johnson